**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| AARON MONDELBLATT | : | |
| | : | Bankruptcy No. 05-34020ELF |
| Debtor | : | |
| | | |
| SEAN KATZ | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| AARON MONDELBLATT | : | |
| | : | |
| Defendant | : | Adversary No. 06-00085ELF |
| | : | |

# MEMORANDUM OPINION

**BY**: **ERIC L. FRANK, United States Bankruptcy Judge**

## I. INTRODUCTION

In the above-captioned adversary proceeding, a creditor seeks a determination that a debt is nondischargeable pursuant to 11 U.S.C. §523(a)(9). Before the court is the Motion of Trump Taj Mahal, Pursuant to Bankruptcy Rule 7024, For an Order Authorizing Trump Taj Mahal to Intervene in the Above-Captioned Adversary Proceeding ("the Motion").

For the reasons set forth below, the Motion will be denied.

1

## II. PROCEDURAL HISTORY

On March 21, 2001 Aaron Mondelblatt ("the Debtor") was involved in a tragic car accident on the Atlantic City Expressway, while returning home from Atlantic City. Sean Katz, a passenger in the car driven by the Debtor, sustained serious injuries in the accident and is now a ventilator dependent quadriplegic. The accident spawned litigation in Atlantic County, New Jersey, which I will refer to collectively as "the State Court Litigation."

The State Court Litigation commenced in December 2001, when Katz filed a negligence action against the Atlantic City Expressway, the South Jersey Transportation Authority, and the State of New Jersey, docketed at ATL-L-12-02 (N.J. Super.). This complaint was amended to add the Debtor on March 5, 2002. Next, on March 18, 2003, Katz filed a separate lawsuit against Trump Taj Mahal ("Trump"), docketed at ATL-L-689-03 (N.J. Super.), alleging that it negligently served alcohol to the Debtor, who was under age, in violation of the Dram Shop Act, N.J.S.A. 2A:22A. In response, on or around September 23, 2005, Trump Taj Mahal filed a Third Party Complaint against the Debtor seeking contribution and indemnity on September 23, 2005.

The Debtor filed a chapter 7 voluntary petition for bankruptcy on October 3, 2005. On January 31, 2006, Katz initiated this adversary proceeding ("the Adversary Proceeding") by filing an adversary complaint to except from discharge pursuant to 28 U.S.C. 523(a)(9) any judgment he may obtain against the Debtor .

On March 13, 2006, Trump filed the Motion now before me. On May 4, 2006, at my request, Trump filed a Letter Brief in support of the Motion.

### III. MANDATORY INTERVENTION

**A.     Introduction**

Federal Rule of Civil Procedure 24(a), made applicable to adversary proceedings by Bankruptcy Rule 7024, provides in relevant part:

> **(a) Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a).

Courts in the Third Circuit apply a four-part test to determine whether an applicant may intervene in an action as of right. An applicant is entitled to intervene as of right when: (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation. Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir.1987), cert. denied, 484 U.S. 947 (1987) (citation omitted). The applicant bears the burden of demonstrating that it has met all four prongs. Development Finance Corp. v. Alpha Housing & Health, 54 F.3d 156, 162 (3d Cir. 1995). United States v. Alcan Aluminum, Inc., 25 F.3d 1174, 1181 n. 9 (3d Cir.1994).

I am satisfied that Trump has made a timely application.[1] I am also satisfied that Trump

---

[1] In this case, the Motion was filed approximately six (6) weeks after the Complaint was filed in the Adversary Proceeding and even before the Debtor filed his Answer to the Complaint. The Motion was filed timely because it sought to intervene at an early stage in the proceedings when it would not prejudice any of the parties or cause any undue delay. See generally Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 369 (3d Cir. 1995)

has a sufficient interest relating to the subject matter of the Debtor's Adversary Proceeding.[2]

However, Trump's ability to satisfy the third and fourth prongs of the four-part test is less clear. Since I conclude that Trump has not satisfied the third prong of the test, because there is no meaningful threat that the pending adversary proceeding will impair Trump's interests, I find that Trump is not entitled to intervene in the Adversary Proceeding as a matter of right. It is therefore, unnecessary to determine whether Trump has satisfied the fourth prong of the test under Rule 24(a).

**B.**     <u>Discussion</u>

**1.**

In determining whether an interest may be affected or impaired within the meaning of Fed. R. Civ. P. 24(a), the court must assess "the practical consequences of the litigation," and "may consider any significant legal effect on the applicant's interest. " <u>Brody By and Through Sugzdinis v. Spang</u>, 957 F.2d 1108, 1123 (3d Cir. 1992) (citations and internal quotations omitted). It is not sufficient that the claim be incidentally affected; rather, there must be "a tangible threat" to the applicant's legal interest. <u>Id</u>; <u>see</u> <u>also</u> <u>Development Finance Corp v. Alpha</u>

---

("the stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved.").

[2] Trump desires to protect itself from potential liability for allegedly serving the Debtor alcohol inside the Taj Mahal on the evening of the accident. <u>See</u>, <u>e.g.</u>, <u>Kansas Public Employees Retirement System v. Reimer & Kroger Assoc., Inc.</u>, 60 F.3d at 1308 (8th Cir. 1995) (as a defendant in a related lawsuit, intervenor had an interest in protecting itself from potential liability); <u>Gregory v. Correction Connection, Inc.</u>**,** 1990 WL 178207 at *2 (E.D. Pa. 1990) (finding that an interest that is contingent upon the result of the subject litigation is sufficient to satisfy Rule 24(a)).

Housing and Health Care, Inc., 54 F.3d at 162.   A showing that a judgment might "practically disadvantage" the applicant suffices to demonstrate such a tangible threat.  Pennsylvania Truck Lines v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, et al., 1990 WL 59305 at *6 (E.D. Pa. 1990).

Trump is concerned that this court may find as a fact in the Adversary Proceeding that the Debtor consumed alcohol at the Trump Taj Mahal on March 21, 2001.  Such a finding is possible regardless whether the Debtor was intoxicated at the time of the automobile accident. Trump argues that its interest will be impaired because the doctrine of collateral estoppel will apply in the State Court Litigation to preclude Trump from re-litigating whether the Debtor was served alcohol inside the Trump Taj Mahal.  Accordingly, Trump desires to protect itself from the possibility that such a finding in this court may be used against Trump in the State Court Litigation.[3]

In its present form, Rule 24 is a product of the 1966 Amendments to the Federal Rules and

---

[3] To establish liability under the Dram Shop statute, a plaintiff must establish that  (1) there was negligent service; (2) a nexus exists between the negligent service and the injury; and (3) the type of injury was a foreseeable consequence of the negligent service.  Showalter v. Barilari, Inc., 312 N.J. Super. 494, 502 (App. Div. 1988).  Negligent service includes service to a minor, under circumstances where the server knew, or reasonably should have known, that the person served was a minor.  N.J.S.A. 2A:22A § 5(b).  In determining the dischargeabililty of the Debtor's debt, this court does not need to make any findings related to the elements of a Dram Shop claim.  Rather, the three elements which must be proven in order for a debt excepted from discharge under Section 523(a)(9) are: "(1) there must be a debt for death or personal injury; (2) the death or personal injury must have been caused by debtor's unlawful operation of a motor vehicle; and (3) the operation of the motor vehicle must have been unlawful because the debtor was intoxicated pursuant to state law." In re Pair, 264 B.R. 680, 684 (Bankr. D.  Idaho 2001) (citations omitted).  While this court must find a causal relationship between the *intoxication* and the injury in order to except the debt from discharge under §523(a)(9) of the Bankruptcy Code, Pair, 264 B.R. at 684, under the Dram Shop statute, the Plaintiff will have to prove a proximate relationship between the negligent *service* and the injury in order to establish Trump's liability.  Notwithstanding that distinction, I acknowledge that in practical terms, a preclusive finding that the Debtor, a minor, was served alcohol inside the Taj Mahal could establish a pivotal component of the overall claim against Trump in the State Court Litigation.

was intended to overcome what was believed to be a restrictive attitude toward intervention on the part of the courts. U.S. v. City of Jackson, Miss., 519 F.2d 1147, 1150 (5th Cir. 1975) (citing Advisory Committee Note to Rule 24, 39 F.R.D. 69, 109-111 (1966); Atlantis Development Corp. v. U.S., 379 F.2d 818 (5th Cir. 1967)). The amendments substituted a more flexible, non-technical standard of "practical impairment." Id.; see also Duffy v. Delaware County Bd. of Prison Inspectors, 1991 WL 193404, *3 (E.D. Pa.1991) ("it is no longer necessary for the applicant to show that he would be barred by res judicata or collateral estoppel, some practical impairment of the Intervenors' ability to protect his interest must be present") (citations and internal quotations omitted).   However, my review of the doctrine of collateral estoppel under New Jersey law leads me to conclude that the application of the doctrine against Trump in the pending State Court Litigation based on a finding in this court is implausible.  Therefore, the unlikely possibility that the factfinding in the Adversary Proceeding will impair Trump's interests is too remote to justify Trump's intervention as a matter of right.

**2.**

Under New Jersey law, collateral estoppel may apply if the party asserting preclusion demonstrates that: (1) the issue to be precluded is identical to the issue decided in the first proceeding; (2) the issue was actually litigated in the prior action – that is, there was full and fair opportunity to litigate the issue in the prior proceeding; (3) a final judgment on the merits was issued in the prior proceeding; (4) a determination of the issue was essential to the prior judgment; and (5) the party against whom issue preclusion is asserted was a party to or in privity with a party to the prior proceeding. Pace v. Kuchinsky, 347 N.J. Super. 202 (App. Div. 2002).

To decide the pending Motion, I need focus only on the fifth element. Privity is typically used to express the notion that there is some relationship between a nonparty and the formal party that is "close enough" to justify bringing the nonparty within the scope of preclusion. Collins v. E.I. DuPont de Nemours & Co., 34 F.3d 172, 176 (3d Cir. 1994) (applying New Jersey Law).

As the New Jersey Superior Court explained in Moore:

> Generally, one person is in privity with another and is bound by and entitled to the benefits of a judgment as though he was a party when there is such an identification of interest between the two as to represent the same legal right, or if a person who is not a party controls or substantially participates in the control of the presentation on behalf of a party, Restatement, Judgments 2d, § 39, or if a person who is not a party to an action is represented by a party, including an "official or agency invested by law with authority to represent the person's interests." Id. § 41(d).

515 A.2d at 273 (citation omitted). "The scope of privity, while largely freed from the very constrictive common law mutuality anchor, remains small." Collins, 34 F.3d at 176 (citing Romano v. Kimmelman, 190 N.J. Super. 554, 464 A.2d 1170, 1174-75 (1983), aff'd, 96 N.J. 66, 474 A.2d 1 (1984)).

As I interpret the relevant New Jersey caselaw, the concept of "privity" is itself not an analytic tool used in determining whether a party should be bound by the results of prior litigation in which it did not participate. Rather, if "privity" is found to exist, it expresses the conclusion that a nonparty's relationship to the prior litigation is sufficient to justify the application of preclusion doctrines.

New Jersey recognizes three (3) scenarios whereby a non-party is bound by collateral estoppel: (1) it failed to take advantage of reasonable opportunities to participate in the first lawsuit, (2) the nonparty controlled or substantially participated in the prior lawsuit even though it

7

did not participate in the prior litigation as a formal party; or (3) the formal party represented the nonparty as a "virtual representative." None of these three scenarios apply to Trump with respect to its relationship to the Debtor and the Adversary Proceeding.

First, a non-party who voluntarily fails to intervene in a relevant lawsuit may be precluded (i.e., subject to the doctrine of collateral estoppel) in a subsequent action. Zirger v. General Accident Insurance Co., 144 N.J. 327 (1996). However, the preclusion doctrine does not extend to a party that has been denied an opportunity to intervene in a prior judgment. Preclusion is limited to situations in which the non-party had "an adequate opportunity to intervene." Id. at 342. And, "a person who has unsuccessfully attempted to intervene in an action prior to entry of judgment is not bound as to the claims therein unless he is thereafter represented by one who is a party." Biddle v. Biddle, 166 N.J. Super. 1, 7 (App. Div. 1979). Therefore, under the relevant caselaw in New Jersey, collateral estoppel should not apply to Trump in the subsequent State Court Litigation because it has attempted, in a timely manner, to intervene in the Adversary Proceeding and I have declined to permit the requested intervention.

Second, a nonparty may be bound by a prior judgment if the nonparty controls or participates in the prior proceeding despite its failure to join in the prior case as a formal party. Restatement (Second) of Judgments § 39 (1980) (a non-party who "controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party"). See, e.g., Ross v. Ross, 308 N.J. Super. 132, 148-49 (1998) (holding that even in the absence of a formal motion to intervene, the third party had "effectively" intervened by choosing to submit a brief and argue the merits of her case at oral argument and on appeal, and was therefore bound by the original judgment). A nonparty that

controls or otherwise significantly participates in an original proceeding may be bound as a "de facto" party. See generally Wright, Miller, and Cooper, 18A Federal Practice and Procedure § 4451 (2d ed. 2002) ("Wright & Miller"). In this case, there is no evidence that Trump's relationship with the Debtor is anything other than arms-length or that the two parties have allied themselves in opposition to the Plaintiff in the Adversary Proceeding. Nor is there anything that suggests that Trump is in a position to "dominate" the Debtor and control the Debtor's litigation tactics in the Adversary Proceeding. Therefore, I conclude that Trump can determine its own fate as to whether it will be exposed to the application of collateral estoppel under this particular theory. Trump risks "practical impairment" only if it chooses and finds a way to participate in the Adversary Proceeding.

Finally, a nonparty may be bound to a judgment if the interests of the nonparty are so closely aligned with one of the parties to the suit that the nominal party serves as the nonparty's virtual representative. See generally 18 A Wright& Miller § 4457. Although New Jersey cases rarely discuss the term "virtual representation" by name, the Third Circuit, applying New Jersey law, stated that virtual representation requires "a pre-existing legal relationship by which a party represents a non-party" to establish privity based on virtual representation. Collins, 34 F.3d at 177. In fact, the Third Circuit explained that a pre-existing legal relationship was a "necessary" condition for privity to exist. Id. (citing E.I.B. v. J.R.B., 259 N.J. Super. 99, 611 A.2d 662, 663 (1992)).[4] In this case, there is no evidence of a pre-existing legal relationship between Trump and

---

[4] The New Jersey courts have not expressly endorsed the Third Circuit's interpretation of virtual representation under New Jersey law. And, there have been instances where a New Jersey court found privity in the absence of a pre-existing legal relationship. See, e.g., McNeil v. Legislative Apportionment Com'n of State, 177 N.J. 364 (2003), cert denied 540 U.S. 1107 (2004) (holding that a group of Republican legislators could be barred from relitigating the validity of a state redistricting plan where separate groups of plaintiffs, which included other

the Debtor.

Finally, Trump expresses a concern that the New Jersey court will apply what one New Jersey Court called the "modern rule" of privity ("the Modern Rule").  In Moore, the court held that privity should be applied when: (1) the claim of the nonparty is based on the same transaction or occurrence; (2) the interest of both claimants are similar and no adverse interests exists; (3) the nonparty had notice of the earlier action; and (4) the nonparty did or had an opportunity to participate or intervene in the earlier case." 515 A.2d at 274.

For several reasons, consideration of the Modern View does not persuade me that Trump is subject to a meaningful risk of adverse consequences from the denial of its intervention request in the Adversary Proceeding.  First, as the Third Circuit pointed out, Moore's reference to this modern view was dicta and is "in significant tension with the New Jersey cases holding that similarity of interests do not create privity." Collins, 34 F.3d at 178 n. 2.  Thus, it is questionable whether the Modern Rule even expresses the current state of the law on this issue in New Jersey.

---

legislators along with registered voters, had lost two previous cases in federal court);  See also Figueroa v. Hartford, 241 N.J. Super 578 (App. Div. 1990) (holding that a crime victim may be deemed to be in privity with the perpetrator and that the victim could be collaterally estopped from relitigating whether the act was "intentional" for purposes of the "intentional acts exclusion" in the perpetrator's insurance policy in subsequent civil litigation against the perpetrator's insurance company).  However, in those cases, the court relied on exceptional considerations to justify precluding the nonparties.  For instance, McNeil relied upon the need for voters and the recently elected legislators to have a final end to the litigation under circumstances where there was a potentially endless supply of possible plaintiffs who could challenge the redistricting plan. 177 N.J. at 400.  Brower and Figueroa were based on the state's interest in having criminal convictions remain definitive on the issue of the perpetrator's guilt.  See Allstate Ins. Co. v. Schmitt, 238 N.J.Super. 619, 633 (App. Div. 1990).  While these cases demonstrate that a New Jersey court may be willing to extend preclusion to a nonparty in the absence of a pre-existing legal relationship, the court is likely to do so only where there are special circumstances that warrant giving conclusive effect to a prior judgment.  I cannot conceive of such special circumstances to warrant this exception here.

Moreover, even if it is applicable, the Modern Rule requires that the nonparty participated or had an opportunity to participate in the prior case. Thus, the denial of the Motion in the Adversary Proceeding by itself should bar application of collateral estoppel under the Modern Rule. In addition, it is difficult to see this as a case in which "no adverse interest" exists as between Trump and the Debtor. Although defense of the claims raised by the Plaintiff causes the interests of Trump and the Debtor to overlap in part, their interests also diverge and may be adverse, as is demonstrated by the existence of Trump's third party complaint against the Debtor in the State Court Litigation. Further, Trump's trial strategy may differ from the Debtor's because the Debtor must only establish, for purposes of dischargeability, that he was not intoxicated. Although the Debtor has an incentive to dispute being served alcohol inside the Taj Mahal, he may not be so concerned with a finding if the amount of alcohol served was minimal. Trump on the other hand, has less incentive to focus on whether the Debtor was or was not intoxicated, and a greater incentive to address the precise location where the Debtor may have consumed alcohol.

In short, for the reasons expressed above, I conclude that there is virtually no risk that Trump is subject to the application of collateral estoppel in the State Court Litigation following the conclusion of the Adversary Proceeding (in which it is not a party). In the absence of a plausible risk that Trump's interest may be affected or impaired by the disposition of the Adversary Proceeding, I conclude that Trump is not entitled to intervene as a matter of right pursuant to Federal Rule 24(a).

B. **Permissive Intervention**

Trump alternatively asserts that the court should grant the Motion under Fed. R. Civ. P. 24(b), applicable herein pursuant to Fed. R. Bankr. P. 7024, which provides for permissive intervention.

Permissive intervention may be granted pursuant to Rule 24(b) when either (1) a federal statute provides a conditional right to intervene; or (2) a movant's claim or defense and the main action have a question of law or fact in common. Rule 24(b), by its terms, leaves the decision of whether to grant permissive intervention to the discretion of the court. Harris v. Pernsley, 820 F.2d 592, 597 (3d Cir.1987). See also Hoots v. Pennsylvania, 672 F.2d 1133, 1135-36 (3d Cir.1982). In exercising its discretion, the court is required to consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b); Brody, 957 F.2d at 1124. While the length of delay is a factor to be considered, it is not dispositive. Molthan v. Temple Univ., 93 F.R.D. 585, 587 (E.D. Pa. 1982). The court must assess the impact of intervention on the case as it presently stands. Id. The factors to be considered by the court include:

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case. . . . whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

Spangler v. Pasadena City Board of Education, 552 F.2d 1326, 1329 (9th Cir. 1977) (footnotes omitted).

Case 06-00085-elf    Doc 20    Filed 09/12/06    Entered 09/12/06 15:24:32    Desc Main
                            Document      Page 13 of 15

As mentioned above, there is a common factual nexus between the Adversary Proceeding and the State Court Litigation. The evidence presented in the Adversary Proceeding necessarily will involve the factual questions whether the Debtor consumed alcohol on the night of the accident and, if so, how much was consumed. In the course of the trial of the Adversary Proceeding, the evidence may well also address the location where alcohol (if any) was consumed. Thus, it is possible, perhaps even probable, that evidence will be presented at trial relating to the fact issue whether the Debtor was served alcohol at the Trump facility. Thus, I will assume that Trump has satisfied the threshold hurdle for the Rule 24(b). See 7C Wright & Miller § 1911. ("If there is a common question of law or fact, the requirement of the rule has been satisfied and it is then discretionary with the court whether to allow intervention.").

However, in the exercise of my discretion, I conclude that the better course is to deny Trump's intervention request. The situs of the alleged consumption of alcohol by the Debtor strikes me as an ancillary issue, not the central issue, in the Adversary Proceeding. Yet, for Trump, it is the critical issue. I see no particular benefit to the resolution of the bankruptcy issues by expanding the §523(a)(9) proceeding to explore, in further detail, the location where the Debtor may have been served and consumed alcohol. At the same time, I am concerned that Trump's intervention in the case will extend and complicate the trial and lead to a needless injection of time and expense addressing a non-material factual issue in the case. See Fisher Foods, Inc. v. Ohio Dept. of Liquor Control, 555 F.Supp. 641, 651 (D. Ohio 1982) (even though a common question of law or fact exists, it is still within the discretion of the court whether to allow intervention and intervention will frequently be denied if collateral or extrinsic issues would be brought in).

In exercising my discretion, I am influenced by two other factors. First, as explained above, I perceive, at best, only an extremely remote possibility that Trump will suffer any realistic impairment of its legal position in the State Court Litigation by findings made in this court in the Adversary Proceeding. Also, all of the issues relating to Trump are fully capable of being aired and are more appropriately resolved in the existing State Court Litigation. See Korioth v. Brisco, 523 F.2d 1271, 1279 (5th Cir. 1975).

Consequently, I will deny Trump's Rule 24(b) intervention request. An order consistent with this Memorandum Opinion follows.

Date:   September 12, 2006

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| AARON MONDELBLATT | : | |
| | : | Bankruptcy No. 05-34020ELF |
| Debtor | : | |
| | | |
| SEAN KATZ | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| AARON MONDELBLATT | : | |
| | : | |
| Defendant | : | Adversary No. 06-00085ELF |
| | : | |

**ORDER**

**AND NOW,** for the reasons set forth in the accompanying Memorandum Opinion, it is hereby **ORDERED** that the Motion of Trump Taj Mahal, Pursuant to Bankruptcy Rule 7024, for an Order Authorizing Trump Taj Mahal to Intervene in the Above-Captioned Adversary Proceeding is **DENIED.**

Date:   September 12, 2006

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE